1  **WO**

2

3

4                    IN THE UNITED STATES DISTRICT COURT

5                        FOR THE DISTRICT OF ARIZONA

6

7  Andrew Left,                          )   No. CV 05-78-PHX-MS
                                         )
8            Plaintiff,                   )   **ORDER**
                                         )
9  vs.                                    )
                                         )
10                                        )
   YP Corp., et al.,                      )
11                                        )
             Defendants.                  )
12                                        )
                                         )
13 ─────────────────────────────────

14         Before the Court is Defendants Lewis & Roca LLP, Ryan, Paul, Copple and

15 Weaver's "Motion to Dismiss" (Doc. # 10) and Defendant YP Corp.'s joinder in that

16 motion (Doc. # 14), and Lewis & Roca's "Motion for Security and Costs" (Doc. # 17)

17 and Defendant YP's joinder in that motion (Doc. # 20).   Oral argument on

   Defendants' motions was held on August 12, 2005.
18
   **I.    PROCEDURAL BACKGROUND**
19
       **A.  The 2004 Litigation**[1]
20
         Litigation relating to this case dates back to January 2004, when Defendant
21
   YP Corp. ("YP")[2] filed a complaint against the website "stocklemon.com" and its
22
   owner William Harris.  [See CV 04-36-PHX-MHM, Doc. # 1 ("first lawsuit")].   YP
23
   alleged libel and slander, and interference with contractual relationships with its
24

25         [1] The Court may take judicial notice of matters of public record outside the
26 pleadings when considering a motion to dismiss. MGIC Indem. Corp. v. Weisman,
   803 F.2d 500, 504 (9th Cir. 1986).
27
           [2]  YP Corp. was previously known as YP.net, Inc.   See
28 http://www.yp.com/press_release.php?releaseid=2004042101.

1   investors, stemming from reports posted on stocklemon.com.  These reports

2   allegedly stated that YP's "'largest shareholder' was 'wanted by the U.S.

3   Government,'" that YP (and an individual connected with YP) were engaged in

4   "money laundering, tax evasion and fraud," and other alleged falsities. [Id., Doc. #

5   1 at 1-2].  YP sought damages and an injunction against further publication. [Id.,

6   Doc. # 1 at 6].

7       In response to YP's complaint, stocklemon.com sought to quash subpoenas

8   issued to stocklemon.com's web hosting service seeking the true identity of the

9   operator of stocklemon.com.[3]  [Id., Doc. # 3].  Stocklemon.com argued that the

10  anonymity of stocklemon.com's publishers should be preserved to maintain First

11  Amendment freedom of speech protections, particularly in light of YP's failure to

12  demonstrate that the identity of the individuals was relevant to a "core claim or

13  defense." [Id., Doc. # 3 at 5].  Stocklemon.com further asserted that YP's claims

14  were made in bad faith, in that the statements "were substantially accurate, [with]

15  minor  inaccuracies  [corrected]. . . as  they  were  brought  to

16  Stocklemon.com's attention." [Id., Doc. # 3 at 5].  Stocklemon contended that YP's

17  motives  were  merely  to  "intimidate  the  individuals  who  made  the  allegedly

18  defamatory statements by removing the safety they enjoy as a direct result of their

19  anonymity," and that many of the allegations contained in the complaint were

20  "consistently overstate[d] or  fabricate[d]. . . ." [Id., Doc. # 3 at 6].

21      Prior to the filing of stocklemon.com's motion to dismiss, YP filed an amended

22  complaint substituting injurious falsehood and disparagement for its libel and slander

23  claim, and providing more detail regarding stocklemon.com's alleged scheme to

24  interfere with YP's business expectancies. [Doc. # 8]. For the first time, YP alleged

25  that stocklemon.com, through its anonymous operators, "identifies and then exploits

26

27      [3]  YP states in the first lawsuit that they issued the subpoenas after an
    investigation uncovered that William Harris, the registrant for stocklemon.com, was
28  a pseudonym. [See Doc. # 4 at 3 (YP's amended complaint); Doc. # 8 at 3].

1   little-known and thinly-traded small caps" by selling stock in the target company

2   "short" prior to issuance of the disparaging report. [Id., Doc. # 4 at 4].  Then, YP

3   speculated, after the report's release, the stock price "sinks" and the anonymous

4   operators "cover" their short positions and "realize an economic gain measured by

5   the difference between the stock price before and after release of the Stocklemon

6   report." [Id.].  YP alleged that over 40 companies had fallen victim to the scheme.

7   [Id.].  YP sought damages, or in the alternative, disgorgement of profits realized by

8   the short-selling.  [Id., Doc. # 4 at 8].

9        YP shortly thereafter filed a motion for expedited discovery.  [Id., Doc. # 9].

10  In support of their motion to obtain the identity of stocklemon.com's publisher, YP

11  referred to a report by the Wall Street Digest that  "exposed" the "pattern and

12  practice of Stocklemon" of profiting from market manipulation. [Id., Doc. # 9 at 2].

13  YP further noted that a person only identified as "StockLemon Guy" made

14  statements to the New York Post that he profits from stocklemon.com's reports, and

15  that he preferred to remain anonymous but could be found and/or identified if sued.

16  [Id., Doc. # 9 at 3].  YP averred that even if counsel for stocklemon.com would

17  accept service for stocklemon.com, "the identity of other defendants, including

18  principals of Stocklemon, [would be] needed to effectuate service of process"

19  because it was questionable whether stocklemon.com was "even a legally

20  cognizable entity or person(s). . . ." [Id., Doc. # 9 at 4].

21       YP concurrently opposed the motion to quash, arguing that stocklemon.com

22  "is not merely an individual Internet bulletin board poster expressing random and

23  unsophisticated opinions," but instead "is part of an organized scheme that

24  intentionally uses pseudo-analytical internet financial reports to disparage microcap

25  and smallcap companies with the intent of improperly manipulating stock prices and

26  then profiting through the short selling of those companies' stock." [Id., Doc. # 8 at

27  1].  YP spelled out that its subpoenas were issued in order that it may "pursue its

28  claims and seek redress for the damages caused by Stocklemon." [Id., Doc. # 8 at

1  2]. YP reiterated that its claims were supported by the admissions made to the New

2  York Post and the Wall Street Digest Report. [Id., Doc. # 8 at 2].

3      In their Reply to the motion to quash, stocklemon.com argued that YP has no

4  basis for its claim that stocklemon.com was seeking to manipulate the price of

5  stocks. [Id., Doc. # 12 at 1-2]. Stocklemon.com further asserted that it agreed to

6  participate in the case, and that the case could proceed without identity of its

7  principals. [Id., Doc. # 12 at 3]. Stocklemon.com reiterated that YP's purpose for

8  filing suit was to obtain the personal identities of stocklemon.com's principals, and

9  that the safety of its principals "would be seriously jeopardized" if "criminals"

10  associated with YP could obtain their identities.  [Id., Doc. # 12 at 7-8].

11      Stocklemon.com filed a motion to dismiss the original complaint, although an

12  amended complaint had been filed.[4] [Doc. # 6].  In its motion to dismiss,

13  Stocklemon.com asserted that the reason for YP's suit "was to obtain the identity of

14  [individuals] associated with Stocklemon.com" and that if YP were to discover its

15  principals' identities, "these individuals would be in danger of physical harm."  [Id.,

16  Doc. # 6 at 3]. Stocklemon.com further claimed that the tortious interference claim

17  failed as a matter of law, and that its statements were protected by the First

18  Amendment because there was a factual basis for the statements. [Id., Doc. # 6 at

19  3-8].

20      YP did not respond to the motion to dismiss.  Instead, counsel for YP was

21  substituted, and YP filed on July 30, 2004 a Notice of Voluntary Dismissal. [Id., Doc.

22  # 20, 21]. Judge Murguia dismissed the case without prejudice on August 30, 2004.

23  [Doc. # 22].

24  ///

25

26

---

27      [4]  YP later sought summary disposition and entry of default based on

28  stocklemon.com's failure to file a responsive pleading to the amended complaint.
[Doc. # 13, 14].

**B.    The 2005 Litigation Initiated by the Lefts**

On January 7, 2005, Plaintiffs Andrew and Andrea Left ("Lefts") filed a complaint that asserts four claims against YP and the Lewis & Roca attorneys that represented YP during most of the first lawsuit.  It is this case that is now before the undersigned.

The Lefts allege in Count I that YP and its Lewis & Roca attorneys engaged in malicious prosecution by filing a lawsuit completely without merit, and with malicious intent to substantially harm them.  [CV 05-78-PHX-MS, Doc. # 1 at 4-5].  The Lefts assert in Count II that Defendants filed the previous lawsuit to cause financial harm to the Lefts, to dissuade the Lefts and Stocklemon from issuing further reports, and to obtain the Left's personal information, constituting abuse of process.  [Id. at 5-6].  In Count III, the Lefts contend that YP and its Lewis & Roca attorneys made "false oral statements about the truthfulness of the Stocklemon reports to third parties" and "[knowing] dishonest oral statements that Stocklemon was involved in illegal activities in violation of securities laws." [Id. at 6].  The Lefts state that these statements were published. [Id.].  The Lefts conclude in Count IV that Defendants, through their "agents," assaulted and battered Andrea Left on March 16, 2004 through verbal threats against the Left family, and that these agents "spit on Plaintiff Andrea Left and forced other offensive contact." [Id. at 7].

**1.    Defendants' Motions to Dismiss**

The Lewis & Roca defendants filed a motion to dismiss. [Doc. # 10].  As background, the Lewis & Roca defendants reiterate in their motion the claims made by YP's amended complaint in the first lawsuit.  The Lewis & Roca defendants also contend that as to the malicious prosecution, abuse of process and libel and slander claims, "the lawsuit on which plaintiffs base their claims. . . was filed against stocklemon.com." [Id. at 4].  Therefore, Defendants argue, the Left Plaintiffs have no standing to pursue such claims.  [Id.].  Defendants note that the Lefts were never served with the first lawsuit.

1        In the alternative, as to the malicious prosecution and abuse of process

2   claims, the Lewis & Roca defendants request that the court dismiss the claims for

3   failure to plead with specificity. [Id. at 5-6]. Defendants point out that the Lefts do not

4   allege that the first lawsuit was "objectively baseless," which is required to establish

5   a claim of malicious prosecution. [Id. at 6]. Further, Defendants aver that Plaintiffs

6   do not point to any overt act other than filing suit to effect an "illegitimate end," and

7   that mere "speculation" that the litigation was pursed to inflict financial harm on them

8   is not sufficient to establish a claim of abuse of process. [Id. at 6-7].

9        As for Plaintiffs' libel and slander claims, the Lewis & Roca defendants argue

10  that Plaintiffs' complaint fails to state with specificity what statements were

11  defamatory, who made them and to whom, when the statements were made, and

12  why the statements were false. [Id. at 8]. Further, Defendants note that the

13  complaint contains no distinction as to which statements were written or published,

14  versus those that were only made verbally.   [Id. at 8]. Defendants further note that

15  the Lefts fail to allege how the alleged statements were directed at them specifically.

16  [Id. at 9]. Defendants state that the Lefts "were not named, involved in or otherwise

17  mentioned" during the first lawsuit. [Id.]. Lastly, the Lewis & Roca defendants point

18  out that as to the assault and battery claims, Plaintiffs' complaint clearly states that

19  it was YP's agents who trespassed on the Left's property and physically

20  threatened/assaulted Andrea Left, not Defendant Lewis & Roca's agents.

21       YP joined in the motion. [Doc. # 14]. YP's argument mirrors that of the Lewis

22  & Roca defendants, except to the extent that YP contends that Plaintiffs fail to

23  identify in their assault and battery claim "which particular Defendant was the

24  principal of the unidentified 'agents,' that the agents were acting within the scope of

25  their agency by engaging in the acts alleged, what acts constituted the purported

26  'threats' and 'offensive conduct,' that YP had knowledge of or approved of the

27  unidentified 'agents" activities, or the manner in which such resulted in damages to

28  Plaintiffs." [Id. at 3-4].

1    In their response, the Lefts first contend that they have standing to bring suit
2    because they were named as John and Jane Doe defendants in the first action.
3    [Doc. # 16 at 3].  The Lefts further aver that the cases Defendants cite "regarding
4    corporate  entities  miss  the  point  entirely,  especially  considering  that
5    www.stocklemon.com is a website and not a corporation." [Id.].

6    As to their malicious prosecution claim, the Lefts counter that Defendants did
7    not have probable cause to pursue their claims of libel and slander because
8    stocklemon.com's statements were completely true. [Id. at 4].  The Lefts further aver
9    that their abuse of process claim is supported by statements in the complaint that
10   Defendants' improper purpose included procuring their names and addresses,
11   making public misstatements through the lawsuit, physical harassment of Plaintiffs,
12   and trying to prevent them from issuing further reports. [Id. at 5].

13   The Lefts claim that their complaint sufficiently states a claim for libel and
14   slander because "Defendants are well aware of their numerous and untrue and
15   damaging statements that followed the filing of the First Lawsuit. . . ." [Id.].  Lastly,
16   as to the assault and battery claims, the Lefts argue that the claims are not limited
17   to YP Corp. because the Lewis & Roca attorneys were "a crucial part of an
18   organized scheme to obtain Mr. Left's personal information. . . ." [Id. at 6].

19   In their Reply, the Lewis & Roca defendants[5] assert that the Lefts do not
20   "allege any direct or personal injury resulting from defendants' conduct," and
21   therefore the Lefts do not have standing to pursue claims on behalf of
22   stocklemon.com. [Doc. # 18 at 4].  Defendants also remind the Court that Plaintiffs
23   fail to address in their response whether a heightened pleading standard is required
24   for malicious prosecution and abuse of process claims. [Id. at 4-5]. Defendants
25   further aver that the conclusory statement that the stocklemon.com reports were
26   "completely true" is not sufficient to survive a motion to dismiss based on failure to

27

28   [5] YP later joined in the reply. [Doc. # 19].

1  state probable cause for a malicious prosecution claim.  Defendants reiterate their

2  argument that the abuse of process claim fails because Defendants were entitled to

3  discover the Left's name in the first lawsuit. [Id. at 5-6].  Defendants contend that

4  Plaintiffs' response that Defendants "are well aware" of the defamatory statements

5  made is fatally unspecific and not sufficient to survive a 12(b)(6) motion. [Id. at 7].

6  **2.  Defendants' Motions for Security and Costs**

7  Defendants contend that if the Court does not dismiss the claims contained

8  in the complaint, or if Plaintiffs seek amendment upon dismissal, the Court should

9  enter an order directing that Plaintiffs post security of no less than $10,000 for costs

10  pursuant to Local Rule (Civil) 54.1(c), which states:

11  In every action in which the plaintiff was not a resident of the District of
   Arizona at the time suit was brought, or, having been so, afterwards
12  removed from this District, an order for security for costs may be
   entered upon application therefore within a reasonable time upon
13  notice.  In default of the entry of such security at the time fixed by the
   Court, judgment of dismissal shall be entered on motion.

14  Local Rule (Civil) 54.1(c).  Taxable costs include Clerk's fees and service fees,

15  transcript fees in limited circumstances, deposition costs (including reporter and
16
   witness fees), other witness fees, and the costs to obtain documents from third
17
   parties.  Id., Rule 54.1(e).  Defendants state that the Plaintiffs are residents of
18
   California and that they were unable to locate any Arizona real property owned by
19
   Plaintiffs in Arizona against which they could recover anticipated costs by execution.
20
   [Doc. # 17 at 2].  YP joined in Defendant Lewis & Roca's motion.  [Doc. # 20].
21
22  In their response, Plaintiffs  first reiterate that Defendants' alleged malicious

23  actions form the basis of the case now before the Court.  [Doc. # 22 at 1-3].

   Plaintiffs contend that they had no choice but to pursue a malicious prosecution
24
   claim in the District of Arizona, and that a security requirement would be an undue
25
26  hardship on the Lefts. [Id. at 3-4].  Plaintiffs note that as a matter of public policy, the

27  Court should not allow Defendants to "twist" Local Rule 54.1 in a way that would

28

1   allow Defendants to file a frivolous lawsuit and then not be held accountable for its

2   legal repercussions.  [Id. at 5].

3          Defendants reply that it was the Lefts themselves who chose to file a

4   malicious prosecution claim in the District of Arizona.  [Id., Doc. # 23 at 3; Doc. # 24

5   at 3-4].  Defendants further aver that Plaintiffs' undue financial hardship averments

6   actually work against them, as the Lefts' lack of financial resources and connection

7   to Arizona is the very reason for enactment of Local Rule 54.  [Id.].

8   **II.    ANALYSIS**

9          "Dismissal can be based on the lack of a cognizable legal theory or the

10  absence of sufficient facts alleged under a cognizable legal theory."  Balistreri v.

11  Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).   However, "a complaint

12  should not be dismissed for failure to state a claim unless it appears beyond doubt

13  that the plaintiff can prove no set of facts in support of his claim which would entitle

14  him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).   In applying this

15  standard, the Court assumes that all of Plaintiffs' allegations are true. Reddy v. Litton

16  Indus., Inc., 912 F.2d 291, 293 (9th Cir. 1990), cert. denied, 502 U.S. 921 (1991).

17         **A.    Plaintiffs' Malicious Prosecution Claim (Count I)**

18         "A complaint for malicious prosecution must allege (1) that there was a

19  prosecution, (2) that it terminated in favor of Plaintiff, (3) that defendants were

20  prosecutors, (4) that they were actuated by malice, (5) that there was want of

21  probable cause, and (6) the amount of damages sustained." Overson v. Lynch, 83

22  Ariz. 158, 161 (Ariz. 1957). "Probable cause" is defined as "upon the appearances

23  presented to the defendant, would a reasonably prudent person have instituted or

24  continued the proceeding?"  Id.

25         "[A]rticle III [of the U.S. Constitution] requires [a] party who invokes [a federal

26  court's] jurisdiction to 'show that he personally has suffered some actual or

27  threatened injury as a result of the putatively illegal conduct of the defendant' and

28  that the injury 'fairly can be traced to the challenged action' and 'is likely to be

1   redressed by a favorable decision.'" <u>Valley Forge Christian Coll. v. Am. United for</u>
2   <u>Separation of Church and State</u>, 454 U.S. 464, 472 (1982).

3   　　　While Defendants are generally correct that "a stockholder may not maintain
4   an action in his own behalf for a wrong done by a third person to the corporation,"
5   <u>Erlich v. Glassner</u>, 418 F.2d 226, 228 (9th Cir. 1969), the plaintiffs in the <u>Erlich</u> case
6   were denied standing to sue because they failed to assert that they were damaged
7   "individually and directly."  <u>Id.</u>  The Supreme Court has recognized the right of a
8   litigant to bring an action on behalf of third parties where: (1) the plaintiff has suffered
9   an "injury in fact" sufficient to give him or her a "sufficiently concrete interest" in the
10  outcome of the issue in dispute; (2) the litigant has a close relation to the third party;
11  and (3) there exists some hindrance to the third party's ability to protect his or her
12  own interests.  <u>Powers v. Ohio</u>, 499 U.S. 400, 410-11 (1991).

13  　　　It cannot be said, therefore, that individuals may not pursue claims on behalf
14  of third parties in each and every case.  However, to the extent that Plaintiffs claim,
15  for purposes of establishing standing, that stocklemon.com was not and is not a
16  corporate entity, the Court notes that this argument is inconsistent with
17  stocklemon.com's statement in its reply to its motion to quash in the first lawsuit that
18  "Defendant Stocklemon.com has agreed to participate in the present case and has
19  neither raised a jurisdictional defense nor attempted to change the venue.
20  Consequently, this case may proceed without divulging the identity of
21  stocklemon.com's principals. . . ."  [CV 04-36-PHX-MHM, Doc. # 12 at 3; <u>see also</u>
22  page 7].  Plaintiffs do not state what hindrance exists to stocklemon.com in pursuing
23  a malicious prosecution claim.  Plaintiff Andrew Left does imply, however, that
24  stocklemon.com's interests are closely tied (if not entirely tied) to him as
25  stocklemon.com's operator.

26  　　　Damages are an element of a malicious prosecution claim.  Under the
27  Restatement (Second) of Torts, a successful plaintiff in a malicious prosecution
28  action may potentially recover for such damages as harm to reputation by any

1    defamatory matter alleged as the basis of the proceedings, expenses reasonably

2    incurred in defending against the proceedings, pecuniary losses, and any emotional

3    distress caused by the proceedings. RESTATEMENT (SECOND) OF TORTS, § 681. See

4    also Maricopa County v. Leppla, 89 Ariz. 220 , 222 (Ariz. 1961) (standing for the

5    premise that Arizona courts follow restatement rules unless otherwise stated in

6    common law). Damages can be divided into two categories for purposes of pleading

7    requirements. "General damages are such as the law implies and presumes to have

8    occurred from the wrong complained of, while special damages are those which are

9    the natural but not the necessary consequence of the act complained of and usually

10   stem from the particular circumstances of the case." S. Ariz. Sch. for Boys v.

11   Cherry, 119 Ariz. 277, 280 (Ariz. Ct. App. 1978).

12       Both Arizona and federal pleading rules require that when special damages

13   are claimed, those damages must be plead with particularity. See Fed. R. Civ. P.

14   9(g); Ariz. R. Civ. P. 9(g). Failure to plead special damages with requisite specificity,

15   where such damages are an element of the claim asserted, may subject the claim

16   to Rule 12(b)(6) dismissal. 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL

17   PRACTICE AND PROCEDURE § 1312 (3d ed. 2004).    The purpose of the special

18   damages pleading rule "is to protect the defendant from being surprised at trial by

19   the extent and character of the plaintiff's claim." S. Ariz. Sch. for Boys, 199 Ariz. at

20   281.   To the extent that Defendants' lawsuit against stocklemon.com allegedly

21   caused Plaintiffs to suffer loss of reputation and earning capacity, incur attorney's

22   fees or experience emotional distress, such damages must be plead with specificity.

23   Rannels v. S.E. Nichols, Inc., 591 F.2d 242, 247 (3d Cir. 1979) (holding that "pain,

24   humiliation and embarrassment" constitute special damages in defamation cases);

25   Freeman v. McKellar, 795 F. Supp. 733, 742-43 (E.D. Pa. 1992) (loss of earnings

26   related to defamation claims); United Indus., Inc. v. Simon-Hartley, Ltd., 91 F.3d 762,

27   764-65 (5th Cir. 1996) (attorney's fees).

28

1    Accordingly, even if the Court were to hold that Plaintiffs have established

2    standing to pursue a malicious prosecution claim on behalf of stocklemon.com,

3    Plaintiffs' general averment in the Complaint that they suffered "substantial harm"

4    from Defendants' allegedly unsubstantiated lawsuit against stocklemon.com is not

5    sufficient to place Defendants on notice as to the extent and character of Plaintiffs'

6    damages.  A complaint is subject to dismissal if "one cannot determine from the

7    complaint who is being sued, for what relief, and on what theory, with enough detail

8    to guide discovery." <u>McHenry v. Renne</u>, 84 F.3d 1172, 1178 (9th Cir. 1996).  The

9    Court, therefore, will dismiss Plaintiffs' malicious prosecution claim for failure to state

10   a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure

11   12(b)(6).

12        **B.    Plaintiffs' Abuse of Process Claims (Count II)**

13   [T]he essential elements of the tort [of abuse of process] include (1) a willful

14   act in the use of judicial process; (2) for an ulterior purpose not proper in the regular

15   conduct of the proceedings." <u>Nienstedt v. Wetzel</u>, 133 Ariz. 348, 353 (Ariz. Ct. App.

16   1982).  "A claim of abuse of process may not be based solely on the fact that an

17   opposing litigant received some secondary gain. . .from the use of a court process.

18   Rather, to survive [a motion for judgment as a matter of law], a claimant must have

19   presented evidence that the court process was used *primarily* to pursue that

20   improper motive." <u>Crackel v. Guenther</u>, 208 Ariz. 252, 259 (Ariz. Ct. App. 2004)

21   (emphasis added).  That is, a plaintiff must show that the defendant intended to use

22   court processes to achieve goals "inconsistent with the proper purpose of those

23   court processes." <u>Id.</u> at 260.

24        Speculation that the lawsuit was filed to exact retaliatory financial damages

25   on Plaintiffs, and a conclusory statement in the complaint that the first lawsuit was

26   "totally without merit," does not negate that Defendants' filing of a lawsuit was

27   consistent with the primary purpose of obtaining a remedy for alleged damage to

28   YP's business.  Plaintiffs do not dispute that Arizona recognizes both the tort of

1  injurious falsehood/disparagement and the tort of interference with business

2  expectancies.  Fillmore v. Maricopa Water Processing Sys., 2005 Ariz. App. LEXIS

3  85 (July 5, 2005) (injurious falsehood); Miller v. Hehlen, 209 Ariz. 462, 471 (Ariz. Ct.

4  App. 2005) (business expectancies).  Plaintiffs cannot dispute that in order to litigate

5  the question of whether the statements on stocklemon.com were false or not, that

6  its operator took advantage of these statements by short-selling its stock, and

7  whether the website's statements and its operator caused YP damage, the proper

8  course of action was to file a lawsuit against stocklemon.com and attempt to file suit

9  against its operator.

10  Plaintiffs aver in the complaint that one of Defendants' willful acts of abuse of

11  process was issuing subpoenas to obtain the Lefts' personal information. However,

12  Plaintiffs do not dispute that Defendants were forced to obtain the Left's information

13  through subpoena because counsel for stocklemon.com refused to provide the

14  addresses of stocklemon.com's operators.  See CV 04-36-PHX-MHM, Doc. # 9,

15  Exhibit D (letter from stocklemon.com's counsel to YP's counsel).  Plaintiffs admit in

16  their argument to establish standing in this lawsuit that Andrew Left was the operator

17  of stocklemon.com.  The issuance of subpoenas is fully consistent with the purpose

18  of pursuing claims against Andrew Left as operator of stocklemon.com.

19  Accordingly, the Court will dismiss Plaintiffs' allegations of abuse of process

20  for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

21  **C.    Plaintiffs' Libel and Slander Claims (Count III)**

22  "Libel consists of the publication of defamatory matter by written or printed

23  words by its embodiment in physical form or by any other form of communication

24  that has the potentially harmful qualities characteristic of written or printed words.

25  RESTATEMENT (SECOND) OF TORTS, § 568(1).   "Slander consists of the publication

26  of defamatory matter by spoken words, transitory gestures or by any form of

27  communication other than those [included in the definition of libel]." Id. § 568(2). "A

28  communication is defamatory if it tends to so harm the reputation of another as to

1  lower him in the estimation of the community or deter third persons from associating

2  or dealing with him."  Id. § 559.

3      While the federal system of notice pleading does not require a complainant to

4  state in detail the facts upon which he bases his claim, "[c]onclusory allegations

5  without more are insufficient to defeat a motion to dismiss for failure to state a

6  claim."  McGlincy v. Shell Chemical Co., 845 F.2d 802, 810 (9th Cir. 1988).  Further,

7  a complaint must provide defendants with "fair notice" of the basis of a plaintiff's

8  claims.  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002).

9      Despite Defendants' contention in its motion to dismiss that the complaint fails

10  to state with any detail the defamatory statements in question, Plaintiffs only

11  response is that Defendants somehow know what statements Plaintiffs are referring

12  to in the complaint.  Further, Plaintiffs' complaint only states that Plaintiffs were

13  "harmed" by Defendants' libel and slander.  It is impossible to glean from Plaintiffs'

14  purely conclusory averments the basis of Plaintiffs' libel and slander claims,

15  including a delineation of what exact statements were allegedly defamatory, how and

16  when they were published or spoken, and how the statements were harmful[6] to

17  Plaintiffs'[7] reputation.  Accordingly, the Court will dismiss the claims for failure to

18  state a claim upon which relief can be granted pursuant to Federal Rule of Civil

19  Procedure 12(b)(6).

20      **D.    The Assault and Battery Claims (Count IV)**

21      "A person is subject to liability for the consequences of another's conduct

22  which results from his directions as he would be for his own personal conduct if, with

23

24      [6] The Court notes that where a statement is actionable libel or slander *per se*,
injury is presumed.  Conard v. Dillingham, 23 Ariz. 596 (Ariz. 1922).  However,

25  without knowing what statements are at issue, neither the Court nor Defendants

26  could determine whether the statements caused injury *per se*.

27      [7] The Court notes that the correct designation of a cause of action in Arizona
for libel and slander in the context of harm to a business (e.g., stocklemon.com) is

28  "injurious falsehood."  See Fillmore, supra.

1  knowledge of the conditions, he intends the conduct, or if he intends its

2  consequences, unless the one directing or the one acting has a privilege or immunity

3  not available to the other."  RESTATEMENT (SECOND) OF AGENCY, § 212.  A master is

4  liable for the torts of its servants if the torts were committed while the servant was

5  acting within his scope of employment.  Id. § 219.

6       Where a complaint generally avers an agency relationship, the question of

7  whether an agency relationship exists is a question of fact.  Corral v. Fid. Bankers

8  Life Ins. Co., 129 Ariz. 323, 326 (Ariz. Ct. App. 1981).  However, the court in Corral

9  did not conclude that mere conclusions regarding agency are enough to survive a

10  motion to dismiss.  Plaintiffs' complaint fails to even generally state facts sufficient

11  to establish that an agency relationship existed between the "agents" and the Lewis

12  & Roca defendants.  That is, to establish agency in the context of an agent's

13  commission of a tort, a plaintiff must demonstrate that the agent was acting within

14  his scope of employment.  RESTATEMENT (SECOND) OF AGENCY, §§ 219, 229.

15  Although Plaintiffs allege in their response to the motion to dismiss that the Lewis &

16  Roca Defendants were part of an "organized scheme" to harm Plaintiffs, Plaintiffs

17  have not alleged sufficient facts in the complaint to support the conclusion that the

18  agents who allegedly committed assault and battery were directly employed by the

19  Lewis & Roca Defendants.[8]  Accordingly, as to the Lewis & Roca Defendants, the

20  Court will dismiss Count IV pursuant to Federal Rule of Civil Procedure 12(b)(6).

21       Plaintiffs have also failed to plead the requisite specificity as to Defendant YP.

22  Plaintiffs provide no facts to support their conclusion that unidentified persons were

23  acting as agents of Defendant YP or that there is any connection between the

24  alleged assault and battery and the conduct or activities of any of the defendants.

25

26

_____

27       [8] Plaintiffs have also failed to make any allegation that the Lewis & Roca
28  Defendants aided or abetted an assault and battery by procuring the Lefts' address
    through litigation.

1  Accordingly, as to Defendant YP, the Court will dismiss Count IV pursuant to Federal

2  Rule of Civil Procedure 12(b)(6).

3  **III.    Orders**

4            IT IS ORDERED that:

5            1.      Defendants' "Motion[s] to Dismiss" (Doc. # 10, 14) are

6                    GRANTED as to Counts I, II, III and IV of Plaintiffs' complaint.

7            2.      Counts I, II, III and IV of Plaintiffs' complaint are DISMISSED without

8                    prejudice pursuant to Federal Rule of Civil Procedure 12(b) for the

9                    reasons and to the extent stated herein.  Plaintiffs shall have twenty

10                   (20) days within which to file an amended complaint, provided the bond

11                   for security and costs is timely posted.

12           3.      Defendants' "Motion[s] for Security and Costs" (Doc. # 17, 20) is

13                   GRANTED.  Bond in the amount of $5,000.00 shall be posted with the

14                   Clerk of the Court within 14 days of the filing of this Order.

15           DATED this 20th day of September, 2005.

20                              _____

                                        Morton Sitver
21                              United States Magistrate Judge